## HALBLEIB et al. v. BENDIX et al.

(Court of Appeals of District of Columbia. Submitted January 11, 1921. Decided February 7, 1921.)

Nos. 1367–1374.

1. Patents ⬤⟿82—Party to interference proceeding held to have abandoned experiment.

Where an applicant for a patent on an engine starter constructed a starter in 1912, which worked successfully, but the company whose business he was attempting to secure adopted a different kind of starter, and his own company never put his device on the market, but prepared to supply a different starter, and, though he filed numerous applications, some of which related to starters, he made no attempt to resurrect or commercialize the device until another party's device was exhibited and described in a periodical, the conclusion that his experiment was abandoned was warranted.

2. Patents ⬤⟿90(2)—Later applicant must show diligence just before earlier applicants came into field.

One whose application for a patent was filed later than those of others, but who proves earlier conception and disclosure, in order to prevail in an interference proceeding, must show that he was exercising diligence just before such other applicants came into the field.

3. Patents ⬤⟿91(3)—Evidence held to show diligence by junior party to interference.

Evidence in an interference proceeding held to show that the junior party, who proved conception and disclosure prior to those of the other parties, was at no time lacking in diligence from a time prior to the time the other parties came into the field until the date he filed his application.

Appeal from a Decision of the Commissioner of Patents.

Interference proceedings in the Patent Office between Edward A. Halbleib and Vincent Bendix and another, between Edward A. Halbleib and Vincent Bendix and others, between Frank Conrad and Vincent Bendix and another, between Frank Conrad and Vincent Bendix and others, and between Joseph Bijur and Vincent Bendix and others, with three proceedings between Joseph Bijur and Vincent Bendix. From a decision awarding priority of invention to Bendix, the other parties appeal. Affirmed.

Melville Church, of Washington, D. C., for appellants.

Wesley G. Carr and Otto S. Schairer, both of Pittsburgh, Pa., Samuel E. Hibben, of Chicago, Ill., and S. T. Cameron, W. B. Herkam, and C. L. Sturtevant, all of Washington, D. C., for appellees.

VAN ORSDEL, Associate Justice. These appeals grow out of a four-party interference, in which priority of intervention was awarded generally to the party Bendix by each of the three tribunals of the Patent Office.

The application of Bijur was filed November 5, 1914; of Conrad, December 26, 1913; of Halbleib, May 28, 1913; and of Bendix, November 24, 1913. A patent was granted to Bendix January 12, 1915.

The issue is set forth in two counts, as follows:

"1. An engine starter comprising, in combination with a member operatively connected with the engine, a motor, a driving member operated thereby and adapted to co-operate with and drive the other member but normally out of engagement therewith, means whereby relative movement between the motor and the driving member automatically moves the latter into driving engagement with the other member, and a yielding driving connection interposed between the motor and the driving member.

"2. An engine starter comprising, in combination with a member operatively connected with the engine, a motor, a driving member operated thereby and adapted to co-operate with and drive the other member but normally out of engagement therewith, means whereby relative movement between the motor and the driving member automatically moves the latter into driving engagement with the other member, and a yielding clutch interposed between the motor and said driving member."

The invention relates to a transmission for an electric starting motor for cranking an internal combustion engine. Each of the interfering applications discloses a starter in which an electric motor rotates a screw shaft on which a nut is mounted. The nut is so adjusted, either by a weight or spring, that it will not rotate until it advances along the shaft to the proper point where teeth on the nut engage teeth upon the flywheel of the gas engine. When this occurs the nut is forced to rotate with the shaft and thus start the engine. The engine gear wheel will then reversely rotate the pinion nut on the screw-threaded shaft, until it moves out of gear with the engine wheel, thus leaving the engine in operation.

The first five cases may be treated in a single group, and turn solely upon issues of fact. The tribunals below being in accord upon the facts, manifest error must appear to justify a reversal. We will consider the parties in order.

[1] Bijur relies wholly upon reduction to practice early in 1912. If this point is established, he must prevail. If not, he fails. He produced in court a starter (Exhibit No. 2) which meets the issues of this interference. He has unquestionably proven that this device was constructed and tested in the early part of 1912 on a Packard car, which had been furnished by the Packard Company for that purpose. The witnesses testified that it worked successfully. While it appears that it broke frequently during the test, it is explained that this was caused by purposely subjecting it to destructive tests. If Bijur's succeeding conduct was such as to corroborate his proof of a successful test, reduction to practice could readily be inferred; but it was not.

Exhibit 2 was designed with a view of securing the business of the Packard Company. But immediately following the test of 1912 that company adopted a different kind of a starter. Though the Bijur Company was engaged in the business, they never put a device like Exhibit 2 on the market. In 1913 they prepared to supply the Vaughn Company with a starter which was different from the one in question. During this period of delay, Bijur, who was a prolific inventor, filed 17 applications in the Patent Office, 10 of which relate to starters, and all seem to have some relation to the art. Nowhere is it established that Bijur made any attempt to resurrect or commercialize his device, as shown by Exhibit 2, until Bendix's device was exhibited at an automobile show in January and February, 1914, where it is claimed

Bijur saw it. A full description of the Bendix device was also published in the Motor Age at the same time.

From the foregoing facts, but one conclusion can be drawn—that Bijur himself did not regard the 1912 test a success. In the light of his conduct, the court cannot be called upon at this late date to give it a status which the inventor did not attribute to it at the time. The conclusion reached by the tribunals below, that what Bijur did in 1912 resulted only in an abandoned experiment, must, in view of his subsequent conduct, be accepted as correct.

[2] With Bijur eliminated from the controversy, we will now consider the cases of the remaining interferents. The party Halbleib took no testimony, but stands upon his filing date, May 28, 1913. Conrad is accorded a date of conception and reduction to practice in May, 1913. Bendix has clearly proven conception and disclosure as early as 1910. To entitle him to prevail, it must appear that he was exercising diligence just before Conrad and Halbleib came into the field in May, 1913.

[3] While Bendix claims that he reduced his invention to practice in the fall of 1912, in what is known as his Nashville machine, it is unnecessary to consider this test in detail, since, we think, from that date until he filed one year later, he was at no time lacking in diligence. In 1912 he became associated with parties who financed his operations until the end, in 1913. It appears that these parties objected to the use of the spring, which interfered to some extent with the speedy development of the invention. He states that, out of consideration for the views of his associates, he was delayed to some extent in developing the spring feature of the invention. But the record is replete with evidence of his activities in experimenting with springs from March to November, 1913. It may be suggested that the discouragement Bendix encountered from his financial backers emanated from a view commonly held at that time by mechanicians in respect of the use of the spring in connection with the screw shaft to establish a "yielding driving connection" or a "yielding clutch."

Coming to the remaining three cases, which involve features of the general invention in issue, the contest is limited to the parties Bijur and Bendix. The issues in these cases relate to details which exclude the devices of Conrad and Halbleib. But they are clearly as readable on the Bendix invention as on the Bijur 1912 device, and since Bijur has failed to establish his right to priority over Bendix, by reason of his failure to reduce to practice in 1912, he cannot prevail in the present cases.

The decision of the Commissioner of Patents, awarding priority of invention to the party Bendix in all of the cases, is therefore affirmed.

Affirmed.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.